[980 NYS2d 543]

In the Matter of Lawrence Ivan Horowitz, an Attorney, Respondent. Grievance Committee for the Ninth Judicial District, Petitioner.

Second Department, February 19, 2014

### APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Gloria J. Anderson* and *Antonia P. Cipollone* of counsel), for petitioner.

*Richard M. Maltz*, New York City, for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Ninth Judicial District served the respondent with a petition containing 12 charges of professional misconduct. A verified answer was duly served. The parties thereafter entered into two stipulations encompassing most of the facts in issue, the admission of documents in evidence, and what several witnesses would testify to if called. Following a hearing, the Special Referee sustained charges 1 through 7 and 10 through 12. Charges 8 and 9 were not sustained. The Grievance Committee now moves to confirm in part, and disaffirm in part, the report of the Special Referee. The respondent cross-moves to confirm in part, and disaffirm in

part, the Special Referee's report. Moreover, the respondent asks the Court to impose a sanction no greater than a public censure.

Charges 1 through 3 emanate from a common set of factual allegations. In or about December 2008, Widad Yousef retained the respondent as substitute counsel in her then-pending matrimonial action. In or about October 2009, the respondent moved by order to show cause to be relieved as Yousef's counsel, alleging, inter alia, that she owed him legal fees in the sum of $16,220. Yousef did not oppose the motion, and the respondent was relieved as counsel by decision and order of the Supreme Court, Westchester County, dated December 17, 2009.

Thereafter, Yousef once again sought the respondent's legal services. On or about March 14, 2010, the respondent and Nicholas Ayoub signed a document entitled "Addendum to Retainer Between Widad Yousef and Lawrence Ivan Horowitz Where Nick Ayoub is the Guarantor." Per the addendum, the respondent agreed to accept $6,000 from Ayoub as payment in full for Yousef's outstanding legal fees. He further agreed that in exchange for Ayoub's additional payment of $2,000, he would perform certain specified legal services on Yousef's behalf. On March 14, 2010, Ayoub gave the respondent three separate checks—a check dated March 14, 2010 in the amount of $4,000, a check postdated April 14, 2010 in the amount of $2,000, and a check postdated May 14, 2010 in the amount of $2,000. The petition alleged that as collateral, Ayoub gave the respondent "jewelry with a retail value of $15,000 to insure the payments listed above." The respondent was to maintain the jewelry in a safe until the $8,000 was paid in full, at which time he was to return the jewelry to Ayoub.

Each of the foregoing checks was timely deposited into the respondent's account at JP Morgan Chase Bank. The final check cleared on or about May 14, 2010. Between May 19, 2010 and June 2, 2010, Ayoub placed four calls to the respondent from his cellular telephone, each of which lasted one to two minutes. On May 21, 2010, the respondent made one call to Ayoub's cellular telephone, which lasted five minutes. The petition alleged that, upon information and belief, Ayoub placed the calls to the respondent to arrange for the return of the jewelry. Ayoub was trying to get his affairs in order because he knew that his death from lung cancer was imminent. Ayoub died on June 5, 2010. As of that date, the respondent had not returned the jewelry to Ayoub.

Ann Morris is Ayoub's ex-wife, and was his nominated executor. On July 7, 2010, Morris was issued letters testamentary by the Essex County Surrogate's Court in New Jersey. Several days after Ayoub's death, on June 10, 2010, Morris telephoned the respondent and asked the respondent to return the jewelry to Ayoub's estate. She placed two such calls, lasting one and four minutes, respectively. The respondent gave Morris his email address and asked her to provide him with her address. Morris understood that the respondent wanted her address so that he could return the jewelry to her. She emailed her address to him on June 10, 2010.

After one week had passed and Morris had not received the jewelry, she called the respondent again, on June 16, 2010. This time, the respondent told her that she needed to provide proof that she was the executor of Ayoub's estate. Morris told the respondent that she could provide a copy of the death certificate which listed her as the executor. The respondent gave Morris his fax number, and she faxed the death certificate to him on June 17, 2010.

Morris did not hear back from the respondent, so she sent him a follow-up email on June 20, 2010, confirming that she had faxed the death certificate listing her as executor, and asking him to call her as soon as possible with respect to returning the jewelry to Ayoub's estate. The respondent did not answer Morris's June 20, 2010 email. As a result, she telephoned him on June 22, 2010. The respondent told Morris that he was with a client, and that he would call her back. However, he did not do so. Morris called the respondent again a few hours later and left a voice message. He did not return her call, so she sent him an email at 5:05 p.m., on the evening of June 22, 2010. The respondent did not respond to Morris's attempts to contact him.

Morris asked an attorney, Jean R. Campbell, to contact the respondent on her behalf and ask that he return the jewelry to the estate. Campbell spoke with the respondent by telephone on or about June 29, 2010. During that conversation the respondent told Campbell that he had returned the jewelry to Ayoub before his death. Campbell asked him to provide her with proof. Campbell memorialized her conversation with the respondent in a follow-up letter, which she emailed, and sent by regular mail, to the respondent on July 5, 2010. The respondent's answering letter, dated July 7, 2010, stated: "As I indicated to you on the telephone, when the last check was cashed, I returned the jewelry to Ayoub." His letter further stated that if

she wanted anything more from him, she should file suit, if appropriate.

Morris sought further assistance from the attorney for Ayoub's estate, Vincent R. Kramer, Jr., to secure the return of the jewelry. Kramer sent a letter to the respondent dated July 29, 2010, advising him that he was legal counsel for the Ayoub estate and asking him to return the jewelry. The respondent did not respond to Kramer's letter.

Kramer sent a second letter to the respondent on August 31, 2010, advising him that he was on the verge of commencing a legal action against the respondent and asking for his immediate reply. Again, the respondent did not respond to Kramer's letter.

Thereafter, Morris filed a grievance against the respondent, a copy of which was mailed to the respondent by the Grievance Committee, on November 9, 2010, at the address in Goshen where he was registered with the Office of Court Administration. The respondent did not return the jewelry until December 10, 2010, approximately seven months after the debt it was meant to secure was paid in full, and six months after Morris asked for its return.

Charge 1 alleges that the respondent failed to promptly pay or deliver to a client or third person the funds, securities, or other properties in his possession that the client or third person was entitled to receive, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (c) (4).

Charge 2 alleges that the respondent engaged in conduct involving fraud, deceit, dishonesty or misrepresentation by making a false statement to another attorney regarding the return of the jewelry in his possession belonging to the Ayoub estate, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (c).

Charge 3 alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, by failing to respond to inquiries concerning the jewelry in his possession belonging to the Ayoub estate, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (h).

Charge 4 alleges that the respondent failed to provide a prospective client in a domestic relations matter with a statement of client's rights and responsibilities at their initial conference, and failed to obtain an acknowledgment of receipt signed by the client, in violation of Rules of Professional Conduct (22 NYCRR

1200.0) rule 1.5 (e) and 22 NYCRR 1400.2. Hugh Lewis sought the respondent's counsel in or about January or February 2010 with respect to commencing a divorce action. Lewis advised the respondent that a prior action for divorce from his estranged wife had been denied. The respondent agreed to represent Lewis in a second attempt to obtain a divorce. To that end, by letter dated February 28, 2010, the respondent contacted John Farrauto, the attorney who had represented Lewis's estranged wife in the prior divorce action. By letter dated April 1, 2010, the respondent sent Lewis a retainer agreement, and a statement of client's rights and responsibilities, each dated April 1, 2010, asking Lewis to sign the documents and return them to him with a check for $3,000. Lewis signed the retainer agreement and returned it to the respondent on or about April 10, 2010, along with the unsigned statement of client's rights and responsibilities and a check for $3,000. The respondent never obtained a signed acknowledgment of receipt of the statement of client's rights and responsibilities.

Charge 5 alleges that the respondent entered into an arrangement for, charged or collected a nonrefundable fee, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.5 (d) (4) and 22 NYCRR 1400.4. Hugh Lewis retained the respondent's services to secure a divorce on his behalf. The retainer agreement dated April 1, 2010, which Lewis executed on April 10, 2010, contained a provision stating that $2,000 of the $3,000 retainer fee would not be refunded, even if the firm did not handle the matter to conclusion.

Charge 6 alleges that, in the course of representing a client, the respondent engaged in deceit and knowingly made a false statement of fact or law to a third person, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rules 8.4 (c) and 4.1. Following his agreement to represent Hugh Lewis in a second attempt to obtain a divorce, the respondent wrote a letter to John Farrauto, the attorney for Lewis's estranged wife, dated February 28, 2010, wherein he stated that Lewis told him "he realizes his love and passion for . . . Rowena Lewis and wishes to resume residing with her and resume marital relations." Lewis never made any such statement to the respondent. In a second letter to Farrauto, dated May 18, 2010, the respondent stated "my client is still requesting that he be allowed to return to the marital residence and resume relations." Lewis did not wish to return to the marital residence. In a letter to the respondent on or about April 10, 2010, Lewis made it clear

that he wanted a quick divorce and had no desire to return to the marital residence or resume marital relations.

Charge 10 alleges that the respondent failed to communicate to a client, in writing, the scope of the representation, and the basis or rate of the fee and expenses for which the client would be responsible, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.5 (b). Hugh Lewis signed the retainer agreement provided to him by the respondent, which was dated April 1, 2010, and returned it on or about April 10, 2010, along with a check for $3,000 and an unsigned statement of client's rights and responsibilities. The retainer agreement failed to advise Lewis that he would be billed for missed appointments and for the attorney's travel time.

Charge 12 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (c). Having agreed to represent Hugh Lewis in a second attempt to obtain a divorce from his estranged wife, and having written to her attorney, John Farrauto, in February and May 2010 relative to the same, the respondent wrote a letter to Lewis, dated January 12, 2011, wherein he stated, "I have left you a number of phone messages stating that the papers have been prepared . . . and have been ready for your signature in order to move ahead to get you divorced." In an undated response, Lewis disputed that the respondent had called him. In a subsequent letter to Lewis, dated February 1, 2011, the respondent reiterated, "I did call your house." The respondent's telephone records for his office and his home reflect that he did not call Lewis during the period at issue—i.e., from November 28, 2010 (the date on or about which the papers were drafted) through February 1, 2011 (the date of the respondent's letter). In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained charges 1 through 6, 10 and 12, and those charges are sustained. Additionally, we find that the Special Referee properly failed to sustain charges 8 and 9, and those charges are not sustained. However, we find that the Special Referee improperly sustained charges 7 and 11, as the evidence did not support the findings of the Special Referee, and those charges also are not sustained. Under the totality of the circumstances, the Grievance Committee's motion to affirm in part, and disaffirm in part, the report of the Special Referee, is granted to the extent that charges 1 through 6, 10 and 12 are sustained, and denied

to the extent that charges 7 through 9 and 11 are not sustained. The respondent's motion to affirm in part, and disaffirm in part, the Special Referee's report, is granted to the extent that charges 7 through 9 and 11 are not sustained, and denied to the extent that charges 1 through 6, 10 and 12 are sustained. In determining an appropriate measure of discipline to impose, we have considered, in mitigation, the respondent's testimony concerning his involvement in public service and his pro bono work through his synagogue and other religious institutions in his community. Moreover, we have considered the testimony provided by the respondent's three character witnesses, who attested to the respondent's good character and reputation for honesty. However, we note that the respondent engaged in at least three separate instances of misconduct involving dishonesty or making a false statement of fact to a client or another attorney, and find that the explanations he provided for this conduct lacked candor. In failing to accept responsibility for the deceit in which he engaged, the respondent brought dishonor upon the legal profession. Additionally, the respondent's explanation for failing to timely return the jewelry entrusted to him by Nicholas Ayoub, to wit, that he expected Ayoub to come to his office to pick it up, is not credible inasmuch as Ayoub was terminally ill and bedridden at the time his debt to the respondent was settled. That the respondent, a seasoned trusts and estates attorney, purportedly "did not know" how to return the jewelry following Ayoub's death, is equally not believable. Previously, the respondent received a letter of caution (April 2011) to ensure that he obtained written consent before taking his fee from a client's escrow funds. Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of three years.

ENG, P.J., MASTRO, RIVERA, SKELOS and SGROI, JJ., concur.

Ordered that the petitioner's motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted to the extent that charges 1 through 6, 10 and 12 are sustained, and denied to the extent that charges 7 through 9 and 11 are not sustained; and it is further,

Ordered that the cross motion of the respondent, Lawrence Ivan Horowitz, to confirm in part, and disaffirm in part, the Special Referee's report is granted to the extent that charges 7 through 9 and 11 are not sustained, and denied to the extent that charges 1 through 6, 10 and 12 are sustained; and it is further,

Ordered that the respondent, Lawrence Ivan Horowitz, is suspended from the practice of law for a period of three years, commencing March 21, 2014, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 21, 2016. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Lawrence Ivan Horowitz, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Lawrence Ivan Horowitz, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).